UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DR. MEHDI MOSADEGH and           *   CIVIL ACTION
CLAIRE MOSADEGH

versus                           *   NO. 07-4427

STATE FARM FIRE AND CASUALTY COMPANY   *   SECTION "F"
and NATIONAL FLOOD INSURANCE PROGRAM

ORDER AND REASONS

Before the Court is defendant's Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This is a Katrina homeowners insurance case. The plaintiffs, the Mosadeghs, own a home that was damaged during Hurricane Katrina in August 2005. The plaintiffs had a homeowners policy with the State Farm and also a flood policy under the National Flood Insurance Program. The claim under the flood insurance policy was dismissed on October 6, 2008. The homeowners policy is at issue.

The homeowners policy provides:

> SECTION 1-CONDITIONS
>
> 2. Your Duties After Loss.  After a loss to which this insurance may apply, you shall see that the following duties are performed:
>
> > ***
> >
> > c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss.

1

>           Attach to the inventory all bills,
>           receipts and related documents that
>           substantiate the figures in the
>           inventory;
>
>      d. as often as we reasonably require:
>
>                     ***
>
>           (2) provide us with records and
>           documents we request and permit us
>           to make copies;
>
>           (3) submit to and subscribe, while
>           not in the presence of any other
>           insured:
>
>                (a) statements; and
>
>                (b) examinations under oath.
>
>                     ***
>
>      6. Suit Against Us.  No action shall be
>      brought unless there has been compliance with
>      the policy provisions. . . .

According to the pleadings, the parties have been working on this claim since at least October 2005. The defendant claims to have already paid the plaintiffs over $196,000 under the homeowners and flood policies. The parties have submitted detailed timelines of communications, claims, and visits by adjusters, but the events specifically relevant to this motion begin in July 2007.[1]

The defendant claims the plaintiffs provided inconsistent and

---

[1] The plaintiffs point to a March 2006 letter and claim that this letter was a denial of benefits under the policy. However, State Farm made payments to the plaintiffs under the homeowners policy after this date. Furthermore, both parties' pleadings center around the events occurring in July and August 2007 and May 2008.

incomplete information[2] and, therefore, arranged in July 2007 for the plaintiffs to submit to an examination under oath (EUO), as provided for in the insurance policy. The EUOs were scheduled for August 3, 2007. The Mosadeghs were told, in response to their inquiry, that their attorney was welcome to attend the EUOs. On July 27 and 30, 2007, the defendant sent the plaintiffs two

---

[2] The defendant, while emphasizing that the homeowners policy does not require it to make any showing regarding its reasons for requiring the plaintiffs to submit to EUOs, specifically identifies six areas where it claims the plaintiffs provided incomplete, inconsistent, and inaccurate information throughout the claims process: (1) The Roof. The defendant inspected the plaintiffs' roof twice, once in the presence of the plaintiffs' roofer, and determined that it needed repair and not replacement. The defendant paid the plaintiffs for repair costs. The plaintiffs replaced the roof without notifying State Farm. The parties engaged in mediation that resulted in additional payment from State Farm, but the matter was not resolved. (2) The Kitchen. State Farm inspected and approved damage to parts of the kitchen and the refrigerator. The plaintiffs replaced several other appliances without informing State Farm and without providing State Farm with an opportunity to inspect the appliances prior to replacement. (3) The Dining Room Ceiling. The defendant asserts that photos submitted by the plaintiffs of damage to certain areas may be identical to damage arising out of Tropical Storm Cindy, for which State Farm has already made payments. The defendant requested receipts of the repairs made after Cindy, but the plaintiffs have yet to produce these documents. (4) The Flood. There is conflicting information from adjusters, witnesses, and the plaintiffs as to whether the home flooded or the extent of the damage from flooding. (5) The Master Bathroom. The plaintiffs made repairs to the bathroom without notifying the defendant. (6) The Mosadeghs' Contents Claims. The defendant asserts that the plaintiffs have continued to add to their claims of damaged contents through June 2007 and have yet to segregate the contents claims into those damaged by flood and wind. The defendant submits that many of the additional items are very expensive, some items appear to be repeats of contents that were previously paid, and the plaintiffs were careless in their claims, including a "misplaced comma" as explanation for an apparently high value ascribed to an item.

"reservation of rights" letters, one for the homeowners policy and one for the flood policy.  The letters stated that "State Farm Fire and Casualty Insurance Company <u>may</u> have no duty to pay, indemnify, defend, or otherwise perform under the policy referenced above." (Emphasis added).  The letters then quoted language from the insurance policies that would limit the defendant's performance in the case of fraud and stated that the defendant "reserves all its rights under the policy, including the right to deny coverage in its entirety."

The defendant's attorney traveled from Lake Charles to Metairie, LA to conduct the plaintiffs' EUOs.  Without prior notice or explanation to the defendant, the plaintiffs did not show up for the EUOs scheduled for August 3, 2007.  On August 6, 2007, counsel for the plaintiffs informed the defendant that he was now representing the plaintiffs.  In that letter, plaintiffs' counsel asserted that the defendant had denied the plaintiffs' claims and therefore the plaintiffs duty to cooperate "had been either completely eliminated or substantially reduced."  Plaintiffs' counsel informed the defendant that the plaintiffs would reconsider submitting to examinations if State Farm produced the plaintiffs' complete claim file and identified any defenses and policy provisions it intended to use to deny or adjust the plaintiffs' claims.

The defendant responded quite directly and openly to

4

plaintiffs' counsel with a letter dated August 7, 2007, stating that the letters sent by State Farm in July were "reservation of rights" letters, and, specifically, that "State Farm has not denied the Mosadegh's claims. State Farm has not sent a denial letter." State Farm asserted that "[t]here is no requirement that State Farm produce a claim file prior to Examination under Oath, and therefore, State Farm will not be doing so." State Farm requested that plaintiffs' counsel contact it to reschedule the EUOs, cautioning the plaintiffs that their claims would prescribe on August 29, 2007 and that they must be in compliance with all provisions of their policy (including submitting to EUOs) if they wish to file suit. The plaintiffs then filed suit on August 27, 2008.

The defendant contacted the plaintiffs on May 5, 2008, scheduled EUOs with the plaintiffs for May 16, 2008, and requested that the plaintiffs bring specific supporting documents to the defendant's office on May 15, 2008. In a letter dated May 13, 2008, and faxed to plaintiffs' counsel at 5 p.m. on May 13th, the defendant stated that the EUOs would take place on May 13th. (It is unclear whether this was an attempt to change the date of the examinations or a typographical error.) Plaintiffs counsel responded on May 14, 2008, stating that the defendant should pursue discovery under the Federal Rules of Civil Procedure because the matter is now in litigation. Defendant filed this Motion for

5

Summary Judgment on September 10, 2008.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress

his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

II.

Summary judgment is appropriate here because there are no issues of material fact.  The plaintiffs do not dispute that they failed to submit to an examination under oath, as is required under their homeowners policy.  Therefore, it is up to this Court to determine whether, as a matter of law, they have fulfilled the terms of the insurance contract and can proceed with this suit.

Compliance with insurance policy provisions are conditions precedent to recovery under that policy, which must be fulfilled before an insured may proceed with a lawsuit.  Lee v. United Fire & Casualty Co., 607 So. 2d 685, 688 (La. Ct. App. 1992).  Further, "the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to suit on the policy."  Id.  Such failure may be the result of the misplaced arrogance of counsel, or the recalcitrance of the litigant.  It may be "manifested by a refusal to submit to an examination under oath or a refusal to produce documents."  Id. (citations omitted).  As noted by one court, "[a]n outright refusal

to submit to an examination is the easy case." Id. at 688. Note, however, that "[w]hen an insurer denies liability for a claim, it abandons its right to compel the claimant to comply with the preliminary provisions of the policy." Patterson v. Liberty Lloyds Ins. Co., 96-2168 (La. App. 4 Cir. 3/26/97), 692 So. 2d 17, 19. State Farm made it clear to counsel that it had not denied liability.

The plaintiffs have not fulfilled the requirements of the homeowners policy under which they are suing. The policy clearly requires the insureds to submit to examinations under oath "as reasonably required" by State Farm. The only explanation the plaintiffs offer is that they did not need to submit to an examination because the defendant denied their claims and alleged that the plaintiffs engaged in fraudulent behavior. That argument is at best short of the mark. The letters the plaintiffs invoke clearly do not deny any claims; they merely state that the insurer "may" have no duty to pay and referring the plaintiffs to language already contained in their policy. While the language does refer to denying claims because of fraud, there is nothing in the letter to suggest that State Farm was actually denying the claim at that point. Further, State Farm sent another letter immediately after receiving notice from the plaintiffs' attorney and made clear that State Farm was not denying the Mosadeghs' claims.

Plaintiffs also claim that they would have submitted to

examinations if the defendant would have produced the plaintiffs' claims file and revealed any defenses State Farm intended to use to deny the claim.  They provide no contractual, factual, or basis in law to support their assertion that they had the right to request this information from State Farm prior to submitting to examinations.

The Court notes that "[t]he purpose of the oral examination of the insured is to protect the insurer against fraud, by permitting it to probe into the circumstances of the loss, including an examination of the insured . . . ." Mier v. Niagara Fire Ins. Co., 205 F. Supp. 108, 110 (W.D. La. 1962).  This is exactly what State Farm was attempting to do.  Plaintiffs' claim that they did not want to submit to an examination because the defendant wanted to probe into possible fraud is a patently limp basis for their refusal.

The defendant must also show that it has been prejudiced by the failure of the plaintiffs to submit to examinations under oath. Trosclaire v. CNA Ins. Co., 93-1741 (La. App. 4 Cir. 5/17/94), 637 So. 2d 1168, 1170.  "The burden is on the insurer to show actual prejudice."  Id.  The defendant has done so on this record.  The defendant asserts that it is unable to obtain information while it is still fresh; it cannot inspect the subject property in a timely fashion after receiving information from an EUO.  See Holden v. Connex-Metalna Mgmt. Consulting, 97-3326, p.2 (E.D. La. 11/2/00)

9

2007 WL 1741839, *2 ("[C]ooperation clauses fulfill the reasonable purpose of 'enabling the insurer to obtain relevant information concerning the loss while the information is fresh.'") (quoting 14 Couch on Insurance § 199:4).

The plaintiffs refer to several cases in a failed and unproductive attempt to support their position, but each is distinguishable from this case. In Arbor Mall v. Am. Empire Surplus Lines Ins. Co., the court stated that "[a]bsent prejudice, the Court declines to dismiss the suit." 06-7661 (E.D. La. 10/29/07), 2007 WL 3172833. However, the defendant in that case had "not alleged any prejudice . . . from plaintiff's alleged failure to comply with the conditions of the policy." Id. (emphasis added); see also Trosclair, 637 So. 2d at 1171 ("[The defendant] has not shown in either its motions or in the affidavits filed in support of the motion, or elsewhere, how or in what manner or respect it has been prejudiced by [the plaintiffs'] failure to [cooperate].")

Plaintiffs also draw the Court's attention to Wright v. Allstate Insurance Co., which held that summary judgment was not appropriate where a plaintiff had failed to submit to an examination under oath, but was later, as stated in an sworn affidavit, willing to submit to a deposition. 06-0485, p. 3 (W.D. La. 12/5/06), 2006 WL 3524030, *3. The court in Wright also found that the plaintiff had submitted "reasonable explanations" for her

failure to cooperate.  <u>Id.</u>  Here, the plaintiffs do not stand willing to submit to a deposition.  They have submitted no affidavits in support of their contentions, and only state that "State Farm could have quickly <u>compelled</u> the Mosadeghs to give depositions, to allow their house to be inspected and to produce documents."  This does not evidence willingness, but rather insists upon the defendants compelling compliance.  It invites a silly sort of saber rattling which never works or well-serves one's client.  Further, the Mosadeghs did not provided any excuse for their failure to show up for the EUOs; only after the fact have they asserted that it was because they believed State Farm had denied their claims.  They made no effort to then reschedule the EUOs after State Farm assured them their claims were not being denied.  They have provided no "reasonable explanations" for their lack of cooperation.

Accordingly, the defendant's Motion for Summary Judgment is GRANTED.  As there are no remaining defendants, the plaintiffs' claims are hereby dismissed.

New Orleans, Louisiana, October 8, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE